UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| KAITLIN FLANNERY,<br><br>                                               Plaintiff,<br>- against -<br><br>THE CITY OF ROCHESTER, a municipal entity, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), COUNTY OF MONROE, TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,<br><br>                                              Defendants. | **REPLY MEMORANDUM OF LAW**<br><br>**IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT**<br><br>Case no: 6:22-cv-6062 |

---

**PRELIMINARY STATEMENT**

A plaintiff's alleged commitment to social justice does not excuse her from satisfying established pleading standards, setting forth adequate allegations to support her claims and providing fair notice to defendants.

Plaintiff has conflated claims and diluted legal standards, and thus failed to set forth sufficient allegations, taken as true, to establish her claims for relief. Plaintiff has withdrawn her ninth and tenth claims for relief (Plaintiff's Memorandum of Law in Opposition to the City Defendants' Partial Motion to Dismiss ("Opposition"), pg. 2, fn.1 and pg. 11, fn.3), and her first, sixth, and eleventh claims should be dismissed by the court.

## ARGUMENT

I.  **PLAINTIFF HAS FAILED TO PROVIDE FACTS FOR A PLAUSIBLE MUNICIPAL LIABILITY CLAIM UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS, SO THIS THEORY OF LIABILITY MUST BE DISMISSED.**

Courts have not "repeatedly held" [1] that law enforcement officers violated protestors' First, Fourth, and Fourteenth Amendment rights and that municipalities should be held liable for it. Opposition, pg. 5. Courts have made varying decisions regarding preliminary injunctions based on the distinct facts and claims presented in pleadings. This Court should similarly consider the allegations made by Plaintiff in light of controlling legal precedent and determine whether or not Plaintiff has successfully plead municipal liability for her asserted constitutional violations. She has not.

---

[1] In the opposition to the City's motion to dismiss in *Sorokti v. City of Rochester et al*, Plaintiff's counsel Elliot Shields devoted nearly three pages to disabusing the court of any suggestion that the court's denial of plaintiffs' request for a preliminary injunction represented a final determination of the legality of the Local Emergency Order. *Sorokti*, No. 21-cv-6709, Docket no. 21, pgs. 4-7.

Counsel now cites multiple cases *regarding preliminary injunctions* and temporary restraining orders in support of his assertion that "courts have repeatedly held that the indiscriminate use of chemical agents and other "less lethal" crowd control tactics […] violated the First, Fourth and Fourteenth Amendments." Opposition, pg. 5, fn.2; *Alsaada* v. *City of Columbus*, 536 F. Supp. 3d 216, 260-274 (S.D. Ohio 2021), *modified sub nom. Alsaada* v. *City of Columbus, Ohio*, No. 20-cv-3431, 2021 U.S. Dist. LEXIS 118647 (S.D. Ohio June 25, 2021) (determining a likelihood of success on the merits regarding excessive force, First Amendment retaliation claim, and *Monell* liability en route to granting a preliminary injunction); *Black Lives Matter Seattle-King Cnty.* v. *City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1212-1215 (W.D. Wash. 2020) (granting a temporary protective order after determining a likelihood of success on the merits on excessive force and First Amendment retaliation claims); *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1291-1293 (D. Colo. 2020) (determining a likelihood of success on the merits on excessive force and First Amendment retaliation claims and granting a temporary protective order); *Don't Shoot Portland* v. *City of Portland*, 465 F. Supp. 3d 1150, 1155 (D. Or. 2020) (granting a temporary protective order after determining a likelihood of success on the merits on excessive force and "a serious question" regarding deprivation of First Amendment rights); see also *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-cv-8924, 2021, U.S. Dist. LEXIS 128437 at *29-35, 59-69 (S.D.N.Y. July 9, 2021) (rejecting a motion to dismiss against plaintiff's claims of excessive force, false arrest, and related *Monell* liability, but dismissing the claims of First Amendment infringement and vagueness and overbreadth under the Fourteenth Amendment). Counsel cannot have it both ways.

This Court should reject Plaintiff's continued conflation of Fourth and First Amendment violations. She seeks to establish municipal liability for both, when the proffered facts do not apply to both. Plaintiff also continues to ignore that her claimed violations must coincide with the facts establishing municipal liability.

Having failed to establish a pattern of constitutional violations, Plaintiff alleges in her opposition papers that the complaint sufficiently establishes the deliberate indifference of the City based on this single incident. Not so. "In *Canton* [*City of Canton v. Harris*, 489 U.S. 378, (1989)], the Court left open the possibility that, 'in a *narrow* range of circumstances,' a pattern of similar violations *might* not be necessary to show deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (emphasis added). The Court provided a hypothetical example of failing to train officers in the use of deadly force to aid its analysis.

> "Given the *known frequency* with which police attempt to arrest fleeing felons and the *predictability* that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force *could* reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights."

*Connick*, 563 U.S. at 63-64 (emphasis added). This is not the class of known, expected, frequent, or predictable events that might establish municipal liability in a single incident. Indeed, nothing in the complaint suggests that these protests were frequent or typical aspects of City of Rochester civil engagement or community life. Plaintiff first compared it to "Bloody Sunday" in Selma, Alabama *in 1965* (Amended Complaint at ¶¶ 2, 24), which reflects the rarity of these protests. According to Plaintiff, the September 2020 protests also involved hundreds and thousands of protestors (Amended Complaint ¶ 27, 22), while the other local examples described by Plaintiff were *one to two orders of magnitude smaller*. These protests were truly unlike anything in recent memory, so it cannot rightfully

be described as frequent or expected. The September 2020 protests as single incident also fails to create municipal liability.

Failure to train liability is the "most tenuous" and courts have thus established a "stringent standard of fault"—which has not been met by Plaintiff.

### II. PLAINTIFF'S SIXTH CLAIM FOR FAILURE TO INTERVENE MUST BE DISMISSED.

Plaintiff rejects the notion that officers must know of constitutional violations (for failure to intervene liability), yet cites Seventh Circuit precedent that states they do: "an officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer *had reason to know* [….]" *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis added); Opposition, pg. 11. The Second Circuit similarly requires knowledge or observation for failure to train liability: "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer *observes or has reason to know* […]" *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (emphasis added).

Plaintiff has not alleged how or when "some of the RPD officers constituted direct unlawful actions" in the presence or knowledge of the "other officers [standing] idly by and [failing] to stop and/or prevent" [the harm]. Opposition, pg. 11. Without these elements, Plaintiff's failure to intervene claim must be dismissed.

### III. PLAINTIFF HAS STILL NOT IDENTIFIED A DUTY UNDER WHICH SHE MAY ASSERT THE CITY NEGLIGENTLY PLANNED ITS OPERATIONS AND INDIVIDUAL OFFICERS ACTED NEGLIGENTLY.

Plaintiff rejects the City's attempt to fit Plaintiff's theory within existing law (i.e., special relationship)—but fails to identify any New York State precedent that has imposed this so-called duty

to plan on local law enforcement. Without a duty, Plaintiff's negligence planning claim must be dismissed.

Plaintiff argues that "the New York Court of Appeals has observed that 'the key in [finding a duty] is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.'" Opposition, pg. 15; citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233 (N.Y. 2001). The Court of Appeals made that point after noting, first, "judicial resistance to the expansion of dut[ies]" and, second, circumstances in which a new duty *may* arise: "where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others." *Hamilton*, 96 N.Y.2d at 233 (emphasis added). The latter circumstances are a restatement of the special relationship exception that the City has already addressed (and Plaintiff rejects), so the City address only the former herein.

Plaintiff asks this Court to delineate a new duty. Plaintiff claims that this Court should impose a duty on the City regarding the protestors, because the municipality was in the best position to control the situation and/or its police officers. Yet Plaintiff has not identified any cases that indicate that New York State courts have held such a duty to plan exists. (To be clear, the New York State Court of Appeals *declined* to impose a duty on gun manufacturers under the above-quoted control theory in *Hamilton*. 96 N.Y.2d at 242.) Plaintiff cited three cases in her opposition papers—*Gonzalez v. City of New York*, 133 A.D.3d 65 (1st Dep't 2015); *Jones v. City of Buffalo*, 267 A.D.2d 1101 (4th Dep't 1999); and *Wyatt v. State*, 176 A.D.2d 574 (1st Dep't 1999)—none of which impose a duty to plan on municipalities. They pertain to negligent retention and supervision of individual officers. Plaintiff also declined to address the Court of Appeals' subsequent observations in *Hamilton* that duties are generally owed only to "limited classes of plaintiffs" and not to "members of the community at large."

96 N.Y.2d at 233. Plaintiff, moreover, completely ignores that the protestors created the situation that she claims the City should have better controlled.

The existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law" (*Gonzalez v. City of New York*, 133 A.D.3d 65, 67 (1st Dep't 2015))—and Plaintiff has failed to support her assertions (that the City has a duty to plan) with any precedent, statutes, public policy, or principles. This claim of negligent planning should, therefore, be dismissed, because it is based on a duty nonexistent in New York State law.

## CONCLUSION

For the foregoing reasons, and those stated in the City's Memorandum of Law in Support of its Motion to Partial Dismiss the Amended Complaint, the City respectfully requests that the Court grant, with prejudice, its motion to dismiss the first, sixth, and eleventh causes of action (since she withdrew her ninth and tenth claims), and award the City such other relief as the Court deems proper.

Date: March 17, 2022

LINDA KINGSLEY
CORPORATION COUNSEL

By: _____/s/ Peachie L. Jones_____
Peachie L. Jones, Esq., Of Counsel
*Attorneys for City of Rochester*
30 Church Street, Room 400A
Rochester, NY  14614
(585) 428-7992
Peachie.Jones@CityofRochester.gov